UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N<u>o</u> 13-CV-969 (JFB)
_____

LAURA GORDON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF JAMES GORDON,

Plaintiff,

VERSUS

AIR & LIQUID SYSTEMS CORP., a/k/a BUFFALO PUMPS, INC., CBS CORP., f/k/a
Viacom, Inc., Successor by merger to CBS Corp. f/k/a Westinghouse Electric
Corp., FOSTER WHEELER ENERGY CORP., GENERAL ELECTRIC CO., ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
January 6, 2014
_____

JOSEPH F. BIANCO, District Judge:

On December 26, 2012, plaintiff Laura Gordon ("plaintiff"), individually and as personal representative of James Gordon, filed this action in the Supreme Court of the State of New York, County of Nassau. The complaint alleges that Mr. Gordon developed lung cancer as a result of his exposure to asbestos-containing products manufactured and supplied by several entities, including the defendants. Plaintiff seeks damages for defendants' defective products and their failure to warn under state law negligence and strict liability theories. On February 22, 2013, defendants CBS Corp., Foster Wheeler Energy Corp., and General Electric Co. filed their Notice of Removal, asserting that this Court has subject matter jurisdiction, pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides, in part, for removal of civil actions against private parties acting under federal officers.[1]

---

[1] Defendants CBS Corp., Foster Wheeler Energy Corp., and General Electric Co. removed this action and opposed plaintiff's motion to remand, and they are referred to collectively as "defendants." A single federal officer defendant may remove an entire action. *See Bradford v. Harding*, 284 F.2d 307, 309-10 (2d Cir. 1960). The *Bradford* rule also forecloses plaintiff's alternative argument that removal by one of the three defendants was untimely. In other words, even if the Notice of Removal by Westinghouse was untimely by one day as plaintiff asserts, the other two moving defendants—Foster Wheeler and GE—filed the Notice in a timely manner on February 22, 2013, because they were not served until January 23, 2013, and January 29, 2013, respectively. Thus, even if plaintiff is correct as to the untimeliness as to Westinghouse's removal, the entire case could still be

Defendants assert that such removal is warranted because defendants were acting under an officer or agency of the United States when they manufactured equipment for the USS *Cadmus* and USS *Detroit*.

Plaintiff moves to remand this action to the Supreme Court of the State of New York, County of Nassau, where it was initiated. In her remand motion, plaintiff argues that defendants are not entitled to federal officer removal because they cannot raise a colorable federal defense. As set forth below, based upon the current record, the Court concludes that defendants have met the requirements of the federal officer removal statute, including the assertion of a colorable federal defense, and thus the action was removable to federal court. Accordingly, plaintiff's motion to remand is denied.

I. BACKGROUND

A. Factual Background

According to the complaint, plaintiff's father was exposed to asbestos aboard various ships during a twenty-year career in the U.S. Navy.[2] Those ships contained turbines and steam generators ("products") that defendants manufactured and supplied to the Navy.

In 2010, plaintiff's father died of lung cancer, which plaintiff contends was the result of his breathing asbestos dust and fibers while working near defendants' products on Navy ships. Plaintiff's legal theory is that defendants were negligent in the design and manufacture of, and failure to warn about, their products.

B. Defendants' Removal

Defendants removed this action under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. Federal officer removal has three requirements, one of which is the central focus of the parties here: whether defendants have raised a "colorable" federal defense. Defendants argue that their colorable federal defense is the government contractor defense as set forth in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). That defense extends immunity to certain contractors performing discretionary functions for the federal government.

To prove that they performed a discretionary function under the direction of federal officers, defendants have submitted affidavits from engineers who are knowledgeable about the design and manufacture of the products at issue, and the Navy's specifications for them. They have also submitted affidavits from physicians knowledgeable about asbestos. The affidavits generally state that the Navy had precise specifications for the products it included in the construction of its ships, and subjected those products to a rigorous approval process. Defendants were not permitted to include asbestos warnings, even though the Navy possessed extensive knowledge about the health risks and effects of exposure to asbestos. Two of the physicians' affidavits conclude that the Navy knew more about asbestos than defendants.

Plaintiff's motion to remand is based largely on her evidentiary objections to the affidavits. She argues that they contain hearsay and speculation, and should be given little weight. Moreover, plaintiff also relies on the declaration of William Lowell,

---

properly removed by the two defendants who met the 30-day deadline imposed by 28 U.S.C. § 1446(b).

[2] Plaintiff's father served in the U.S. Navy from 1955 to 1975. He was stationed aboard the USS *Cadmus* and the USS *Detroit*, and also worked in several shipyards.

2

who, based upon his Navy and merchant seaman background, opined that the military specifications at issue "demonstrate that the Navy did not discourage or prohibit equipment manufacturers from warning about hazards associated with the foreseeable use of their equipment." (Declaration of William Lowell, at ¶ 12.)

### C. The MDL Decision

These affidavits appear to be the same as those submitted in similar lawsuits around the country, in which plaintiffs have leveled the same evidentiary criticisms. Many of these cases were consolidated in MDL-875 in the Eastern District of Pennsylvania, and certain decisions of that court have been highlighted by the Judicial Panel on Multidistrict Litigation as useful examples for courts to follow in future asbestos cases. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 1377, 1379 n.5 (J.P.M.L. 2011). One of those opinions, authored by Judge Robreno, decided a remand motion involving the same experts' affidavits submitted in this case. *See Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010). That court denied the motion because the plaintiff's evidentiary arguments, though potentially valid at a later stage of trial, were inconsistent with the Supreme Court's "expansive interpretation" of Section 1442 as a statute encouraging removal. *Id*. at 778-79.

## II. DISCUSSION

The Court finds *Hagen* persuasive, and after independently analyzing plaintiff's motion for remand in this case, likewise concludes that defendants have satisfied the requirements of the federal officer removal statute.

### A. Evidentiary Objections

As a threshold matter, plaintiff objects to the evidentiary submissions by defendants as "nothing more than speculative and hearsay assertions that the government had reasonably precise specifications about the use of the materials found in Defendants' equipment." (Pl. Mem. at 6.) However, the Court concludes that the affidavits submitted by defendants can be considered by the Court for purposes of determining whether removal is warranted. The affidavits set forth the basis for the statements that each affiant offers with respect to the Navy's control over equipment manufactured by Foster Wheeler and GE for the Navy, and the Court concludes that such affidavits are admissible for purposes of the remand motion. Plaintiff's generalized objections, although characterized as evidentiary in nature, relate solely to the weight that the evidence should be given, not to its admissibility. Thus, any objection to the admissibility of these affidavits for purposes of the remand motion is denied. *See, e.g.*, *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1036-37 (D. Haw. 2012) ("These experts' extensive experiences in the Navy provide the basis and foundation for their opinions regarding what the Navy would, or would not, have allowed as to asbestos warnings, and take this testimony outside the realm of unsupported speculation. And such testimony is certainly helpful in determining whether Defendants have established a colorable federal defense, and in particular whether the government exercised its discretion in determining the warnings to provide.")

### B. Federal Officer Removal

Pursuant to the federal officer removal provision set forth in Section 1442(a)(1), a case may be removed from state to federal

3

court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such officer." 28 U.S.C. § 1442(a)(1).

As a general matter, "the defendant bears the burden of demonstrating the propriety of removal." *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994). Plaintiff characterizes that burden as "heavy" (Pl. Mem. at 1), but in doing so she misses the distinction between the general removal statutes, which are to be strictly construed, and federal-officer removal, which "should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The federal officer removal statute must be construed broadly because "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Id*. Thus, at this phase of trial, "we are concerned with who makes the ultimate determination, not what that determination will be." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012). A federal officer, or his agent, "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. As the Court in *Hagen* explained, and this Court agrees:

> While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. . . . It is the sufficiency of the facts stated—not the weight of the proof presented—that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Hagen*, 739 F. Supp. 2d at 782-83 (citation omitted); *accord Clayton v. Air & Liquid Sys. Corp.*, No. 13-CV-847-A, 2013 WL 6532026, at *6 (W.D.N.Y. Dec. 12, 2013) (agreeing with *Hagen* that plausibility for removal purposes is less exacting than the *Twombly* standard for motions to dismiss).

C. The *Isaacson* Test for Federal Officer Removal by a Private Party

In the Second Circuit, private contractors may avail themselves of federal officer removal if they meet a three-part test:

> First, they must show that they are "person[s]" within the meaning of the statute who "act[ed] under [a federal] officer." . . . Second, they must show that they performed the actions for which they are being sued "under color of [federal] office." . . . Third, they must raise a colorable federal defense.

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (internal citations

omitted).  Below, each element is discussed in turn.

### 1. Person Acting Under a Federal Officer

The parties do not dispute the personhood of defendants in this case for purposes of the remand issue. The Second Circuit has previously held that corporate entities like defendants are "person[s]" under § 1442. *In re Methyl Tertiary Butyl Esther Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

In addition, there is evidence that defendants acted under a federal officer. "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136 (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)). An entity acts under a federal officer when it helps with or carries out that officer's duty, often under close supervision. *Id*. at 137; *see also Ruppel*, 701 F.3d at 1181 ("Cases in which the Supreme Court has approved removal involve defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government.").

*Isaacson* found this element satisfied where the defendant was a private contractor supplying the Government with a product it needed during war—"a product that, in the absence of Defendants, the Government would have had to produce itself." 517 F.3d at 137.  In *Isaacson*, that product was Agent Orange; here, the products are Navy ship components that are of the same necessary character, especially when considering the vital role of warships in our nation's defense.  As is discussed *infra*, there is colorable evidence that defendants acted "under" the Navy in building these warship components by working hand-in-hand with naval authorities to ensure compliance with exacting technical demands.

### 2. Actions Under Color of Federal Office

The second element requires defendants to show that they performed the actions at issue under color of federal office.  "Over time, this second prong has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (citing *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926)). Private parties, like defendants here, "must demonstrate that the acts for which they are being sued. . . occurred *because of* what they were asked to do by the Government." *Id*. (emphasis in original).

Although this element requires a factual showing, *Isaacson* clarified that "[t]he hurdle erected by this requirement is quite low." *Id*. Plaintiff argues at various points that defendants have not identified regulations or contract terms in which the Navy mandated the use of asbestos, but defendants may satisfy this element without reference to specific Navy requirements. Instead, "[t]o show causation, Defendants must only establish that the act. . . occurred *while* Defendants were performing their official duties." *Id*. at 137-38 (citing *Willingham*, 395 U.S. at 409; *Soper*, 270 U.S. at 33) (emphasis in original).  In *Isaacson*, it was enough that the contractual relationship gave rise to the Agent Orange contamination, even if the contract did not call for it.  Here, defendants have put forth evidence that the contractual relationship is similarly causal: defendants made their products because the Navy agreed to procure them.  Thus, there is evidence in the record that would allow defendants' conduct to fall under the color of a federal office regardless of whether there were contractual terms concerning asbestos.

5

3. Colorable Federal Defense

The principal dispute between the parties is whether defendants have shown a colorable federal defense, namely the federal contractor defense. "The rationale for this defense is not to protect the contractor as a contractor, but 'solely as a means of protecting the government's discretionary authority over areas of significant federal interest.'" *McCue v. City of New York*, 521 F.3d 169, 194 (2d Cir. 2013) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 89-90 (2d Cir. 2008)).

The federal contractor defense displaces state-law design and manufacturing duties "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. The Second Circuit has also applied *Boyle* to the duty to warn, requiring defendants to show that federal government officials "dictated" the contents of any warnings that would accompany the product. *Grispo v. Eagle-Pitcher Indus. Inc.*, 897 F.2d 626, 630 (2d Cir. 1990).

*Boyle* and *Grispo* both examined the merits of the federal contractor defense at a later stage of trial. Thus, although they define the elements of the defense at issue, the evidentiary burden is lower here. For the purposes of this remand motion, the federal contractor defense need only be "colorable," not "clearly sustainable." *Willingham*, 395 U.S. at 406-07.

The Second Circuit has not defined "colorable" beyond *Willingham*'s distinction with "clearly sustainable," but the decisions of other courts confirm that defendants' burdens of persuasion and production are low. In *Hagen*, Judge Robreno concluded that courts should consider facts in the light most favorable to defendants. 739 F. Supp. 2d at 783. At least two courts in this circuit have held that "[a]dequately supported affidavits are sufficient to establish a colorable federal defense." *Depascale v. Sylvania Elec. Prods. Inc.,* 584 F. Supp. 2d 522, 527 (E.D.N.Y. 2008) (citing *Viscosi v. Am. Optical Corp.*, No. 3:07-CV-1559, 2008 WL 4426884, at *4 (D. Conn. Sept. 29, 2008)).

These decisions undoubtedly serve the purpose of § 1442(a)(1) and follow the Supreme Court's guidance not to interpret that statute "narrow[ly]" or "grudging[ly]." *Willingham*, 395 U.S. at 407. With that guidance in mind, it is apparent, based upon the current record, that defendants' evidence is colorable under all three elements of *Boyle*. First, multiple affidavits by experts knowledgeable about the products and the Navy's procurement of them support defendants' position that design, manufacture, and delivery were governed by reasonably precise Navy specifications.[3] Those specifications were conveyed in engineering drawings and technical manuals prepared and approved by Navy personnel, as part of a process in which the Navy exercised tight control over both the design of the products themselves and the written material that accompanied them. There is evidence in the record that warnings of any type were expressly forbidden.[4] Although

---

[3] The Court notes particularly the affidavits of J. Thomas Schroppe, Admiral Ben Lehman, David Hobson, and Admiral Roger Horne, all of which were discussed in greater detail in *Hagen*, 739 F. Supp. 2d at 774-75.

[4] *See, e.g.*, Affidavit of David Hobson, dated February 4, 2005 ("GE would not have been permitted, under the specifications, associated regulations and procedures, and especially under the actual practice as it evolved in the field, to affix any type of warning….").

6

plaintiff has submitted an affidavit to the contrary, that single affidavit does not prevent defendants from clearing the low hurdle of raising a colorable defense.

Second, the evidence of the Navy's acceptance and use of defendants' products, after the rigorous trial and approval process described in the affidavits,[5] supports defendants' assertion that they conformed to the reasonably precise specifications. *See Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 89 (2d Cir. 1993) (finding conformity based on the Government's order and subsequent approval process).

Finally, the affidavits provide at least colorable evidence that the Navy knew far more about asbestos than the defendants.[6] Where the government has an informational advantage, *Boyle*'s third prong does not require evidence that defendants warned the government. *See, e.g.*, *Beaver Valley Contracting Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir. 1989); *see also In re "Agent Orange" Prod. Liab. Litig.*, 534 F. Supp. 1046, 1055 (E.D.N.Y. 1982) (formulating the third prong as "the government knew as much as or more than the defendant about the hazards to people that accompanied use of 'Agent Orange'").

In sum, defendants have submitted evidence to support their position that they can satisfy all three elements of *Boyle*, and have raised a colorable federal contractor defense. As noted *supra*, plaintiff's arguments to the contrary rely on characterizations of the affidavits as containing hearsay and speculation, and seek to draw fine distinctions concerning how reasonably precise the Navy's regulations and contract terms were. For example, plaintiff relies heavily on *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 144-45 (D. Mass. 2009) to support its argument that the Court should look past the affidavits and consider whether the text of specific documents expressly prohibited asbestos warnings. The MDL Court concluded that *Holdren*'s evidentiary standard was simply too high at the remand stage, given that the purpose of federal officer removal was to encourage the trial of such complex evidentiary questions in federal court. *Hagen*, 739 F. Supp. 2d at 781-82. This Court agrees. Those arguments may have merit later in this litigation, but they ask more of defendants at this stage than Section 1442(a)(1) requires. As the court in *Hagen* noted, "if it later becomes evident that the relevant facts developed in the litigation do not support jurisdiction, the Court will do what it would do in any removed case: dismiss and remand the action based on lack of subject matter jurisdiction." *Hagen*, 739 F. Supp. 2d at 782.

---

[5] *See, e.g.*, Affidavit of Admiral Ben Lehman, dated October 6, 2004 ("[T]he Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings.").

[6] The Court notes particularly the affidavits of Captain Lawrence Stillwell Betts, which was discussed in greater detail in *Hagen*, 739 F. Supp. 2d at 775, and of Dr. Samuel Forman, M.D.

### III. CONCLUSION

For the foregoing reasons, defendants' removal of this action to federal court was proper under 28 U.S.C. § 1442(a)(1), and accordingly, plaintiff's motion to remand is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 6, 2014
         Central Islip, New York

\* \* \*

The attorney for plaintiff is Kardon Aaron Stolzman of Napoli Bern Ripka Shkolnik, LLP, 350 Fifth Avenue, Suite 7413, New York, NY 10118.  The attorneys for defendants are Michael A. Tanenbaum and Matthew R. Straus, Sedgwick LLP, Three Gateway Center, 12th Floor, Newark, NJ 07102.